JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
Assuming for the purpose of this case only (because the plaintiffs have not argued otherwise), that the District Court had the authority to require that plaintiffs prove their case prior to trial, without any shifting of the burden pursuant to normal summary judgment procedures, I conclude that the plaintiffs’ affidavits, when read in combination with each other, were sufficient to establish that products produced by the defendants included toxic chemicals which contributed as causes to specific injuries sustained by Mischelle Schelske.
The Schelskes submitted affidavits from three different professionals in response to the District Court’s case management order. The first was from Jack Thrasher, Ph.D., a toxicologist from New Mexico; the second from Curt Kurtz, M.D., Mischelle’s attending physician; and the third from Gunnar Heuser, M.D., a physician with extensive experience in the effect of toxic chemical exposure.
Dr. Thrasher indicated that he reviewed the products identified by Mischelle as those with which she had come into contact during the course of her employment, and also reviewed the Material Safety Sheets pertaining to each product. He listed those products by name, manufacturer, and the chemicals included in each product. He also listed products for which the chemical components had not been adequately identified by the manufacturer and for which further information was required. He identified typical adverse effects from the types of chemicals which were included in the list and stated that in his opinion, daily exposure to a combination of these chemicals caused Mischelle’s physical ailments. He described her injuries as *489 central and peripheral neuropathy, the presence of auto-antibodies in her immune system, and injuries to her organs, vascular system, and nervous system as a result of the auto-antibodies’ presence. In his letter attached to his affidavit, he stated that:
In short, the exposure to multiple chemicals and her symptom complex indicate that Ms. Schelske suffers from multiple organ injuries. These type of injuries have been collectively termed multiple chemical sensitivity by various clinicians.
In conclusion, Ms. Schelske’s current health problems are permanent. It is my opinion, within a reasonable degree of scientific and toxicologic probability, that her chronic daily exposure to emissions from various cosmetic products is directly related to her chronic health problems.
Dr. Curt G. Kurtz stated, in his affidavit, that he is a medical doctor practicing in Bozeman and had treated Mischelle Schelske for the past year and was, therefore, familiar with her medical condition. It was his opinion that Mischelle had suffered injuries as a result of exposure to chemicals in the work place. He stated that her injuries include reactive airway disease and multiple organ injuries. He stated that she was also being evaluated for cognitive deficits due to chemical exposure. He had reviewed the affidavit of Dr. Jack Thrasher and stated overall agreement with its contents. He stated that all of the chemicals listed in the Thrasher affidavit are toxic to some extent and likely caused or contributed to the various injuries sustained by Mischelle.
In his affidavit dated August 17, 1995, Dr. Heuser stated that during the previous month he and assorted other specialists had seen and examined Mischelle, and that based upon those examinations, and his consideration of the list of products to which she indicated she had been exposed, along with the information about those products included in the Material Safety Data Sheets, he believed that certain of the chemicals included in those products caused injuries to Mischelle. He then listed specific chemicals and the specific disease suffered by Mischelle which was associated with that chemical. He introduced the lists by stating in his affidavit that:
A list of the injuries sustained by Ms. Schelske, though not by any means an exhaustive list, is presented along with documentation from the medical literature which confirms that the symptoms and injuries sustained by Mischelle Schelske are in fact the result *490 of repeated exposure to the said chemicals within the identified products.
He went on to state that:
Chemicals in defendants’ products [are] associated with lung disease, including irritation of mucus membranes, storage disease, asthma, reactive airway dysfunction syndrome, sensitization, atelectasis, bronchiectasis, interstitial pulmonary fibrosis and lung cancer. Mischelle Schelske has exhibited symptoms compatible with and suggestive of all of the foregoing, with the exception that lung cancer has not yet been diagnosed. The list of diseases and injuries below are part of what Ms. Schelske suffers from in my medical opinion.
(Emphasis added.)
In other words, the affidavit of Jack Thrasher, Ph.D., identified the chemical component of each of the products to which Mischelle had been exposed. The affidavit Gunnar Heuser, M.D., identified the injury that, in his opinion, Mischelle has sustained as a result of exposure to each of the chemical components. Both affidavits also stated that without further information from the manufacturers, there were some products whose chemical components were not known. However, it clearly is not correct, as the District Court concluded, that Dr. Heuser’s affidavit failed to list Mischelle’s injuries, and failed to identify chemicals which contributed as a cause of those injuries.
I conclude that the Schelskes provided all of the information that could reasonably have been provided or required at this stage of pretrial proceedings, and that that information was certainly adequate to enable the defendants to proceed with discovery by further depositions of the experts who had submitted affidavits. If further identification of specific time periods during which exposure occurred, or the nature of consequences from specific chemicals was necessary in order to defend against this case, the defendants had all of the information they needed with which to begin discovery of those details.
I therefore conclude that if the District Court ever had authority to require the plaintiffs to prove their case prior to trial in as great a detail as was required by the District Court’s case management order, then that order was satisfied by the information summarized above.
For these reasons, I dissent from the majority opinion. I would reverse the District Court order granting summary judgment to the defendants.